SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
ORI KATZ, Cal. Bar No. 209561
MICHAEL M. LAUTER, Cal. Bar No. 246048
TIMOTHY C. PERRY, Cal. Bar No. 248543
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:    415-434-9100
Facsimile:    415-434-3947

Attorneys for ARRIVA PHARMACEUTICALS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

On Appeal from the United States Bankruptcy Court
for the Northern District of California
Hon. Edward D. Jellen

| | |
|---|---|
| ALPHAMED PHARMACEUTICALS CORP.,<br><br>Claimant-Appellant,<br><br>v.<br><br>ARRIVA PHARMACEUTICALS, INC.,<br><br>Reorganized Debtor-Appellee. | No. 08-00691-SI<br><br>**APPELLEE'S BRIEF<br>[ALPHAMED CLAIM APPEAL]**<br><br>Date:         July 24, 2008<br>Time:         3:30 p.m.<br>Location:   Courtroom 10, 19th Floor<br>                 450 Golden Gate Ave.<br>                 San Francisco, CA 94102 |

# TABLE OF CONTENTS

Page

I.    STATEMENT OF THE CASE ................................................................. 1

II.   STANDARDS OF REVIEW ................................................................... 2

III.  STATEMENT OF THE FACTS ............................................................... 3

      A.    The Background of AlphaMed's Disallowed Claim. ...................................... 3

      B.    The Arizona Court Upholds the Protease License and Issues
            Injunctions Against the Lezdeys. ....................................................... 3

      C.    The Northern District of California Recognizes the Arizona Court's
            Rulings. ............................................................................... 5

      D.    Arriva Prevails Against Similar Claims by AlphaMed in Florida. ....................... 5

      E.    Treatment of AlphaMed's Claim in the Bankruptcy Court. ............................... 7

      F.    This Appeal. .......................................................................... 9

IV.   SUMMARY OF THE ARGUMENT ........................................................... 9

V.    ARGUMENT ............................................................................. 10

      A.    The Bankruptcy Court Did Not Err by Disallowing AlphaMed's Claim
            Rather than Holding Adjudication of It in Abeyance Pending the
            Resolution of the Eleventh Circuit Appeal. ........................................... 10

            1.    The Bankruptcy Court and the Bankruptcy Code Provided for
                  AlphaMed's Appeal Rights. ...................................................... 10

            2.    The Plan Confirmation Would Have Been Severely Affected
                  by AlphaMed's Suggested Delay. ................................................. 12

      B.    The Bankruptcy Court Did Not Err by Holding that the Florida Jury's
            Liability Findings Were Overturned. .................................................. 14

            1.    AlphaMed Misconstrues the Basic Effect of a JMOL, which is
                  to Completely Overturn a Jury Verdict. ......................................... 15

            2.    In Addition, the Florida District Court's Opinion Granting the
                  JMOL Expressly Provided for the Vacatur of the Entirety of
                  the Jury Verdict. .............................................................. 16

APPELLEE'S BRIEF
ALPHAMED CLAIM APPEAL

        3.     AlphaMed's Strained Reading of Case Law is Incorrect and Inapt. ............................................................................... 18

VI.    CONCLUSION ...................................................................... 22

W02-WEST:5MML1\400890436.3

APPELLEE'S BRIEF
ALPHAMED CLAIM APPEAL

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Air-Sea Forwarders, Investment v. Air Asia Co., LTD,*
  880 F.2d 176 (9th Cir. 1989)..............................................................................19

*AlphaMed v. Arriva,*
  432 F. Supp. 2d 1319 (S.D. Fla. 2006) ................................2, 6, 7, 17, 18, 20

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1981)..........................................................................................15

*Artis v. Hitachi Zosen Clearing, Inc.,*
  967 F.2d 1132...................................................................................................21

*Barber v. Whirlpool Corp.,*
  34 F.3d 1268 (4th Cir. 1994)............................................................................20

*Berry v. United States,*
  312 U.S. 450 (1941)....................................................................................19, 20

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)..........................................................................................19

*Christopher v. Florida,*
  449 F.3d 1360 (11th Cir. 2006).........................................................................15

*Federated Department Stores,*
  144 B.R. 989 (Bankr. S.D. Ohio 1992)............................................................11

*Firestone Tire and Rubber Co. v. Pearson,*
  769 F.2d 1471 (10th Cir. 1985).........................................................................19

*Forrett v. Richardson,*
  112 F.3d 416 (9th Cir. 1997).............................................................................15

*In re Hamada,*
  291 F.3d 645 (9th Cir. 2002).............................................................................14

*Harris Trust & Sav. Bank v. John Hancock Mutual Life Insurance,*
  970 F.2d 1138 (2d Cir. 1992)............................................................................22

*In re Harrison,*
  71 B.R. 457 (Bankr. D. Minn. 1987) ................................................................13

*In re Hill,*
  811 F.2d 484 (9th Cir. 1987).............................................................................13

*In re Park-Helena Corp.,*
  63 F.3d 877 (9th Cir. 1995).................................................................................2

*In re Spring Garden Foliage, Inc.,*
  17 B.R. 882 (Bankr. M.D. Fla. 1982) ..............................................................11

-iii-

APPELLEE'S BRIEF
ALPHAMED CLAIM APPEAL

*In re Timbers of Inwood Forest Associates, Ltd.*,
  808 F.2d 363 (5th Cir. 1987), aff'd, 484 U.S. 365 (U.S. 1988) .................................. 14

*Jorgensen v. Cassiday*,
  320 F.3d 906 (9th Cir. 2003)............................................................................ 16

*Lifewise Master Funding v. Telebank*,
  374 F.3d 917 (10th Cir. 2004).................................................................... 20, 21

*NLRB v. Bildisco & Bildisco*,
  465 U.S. 513 (1984) ........................................................................................ 14

*Pordy v. Land O'Lakes, Inc.*,
  97 Fed. Appx. 921, 926 (Fed. Cir. 2004) ........................................... 15, 20

*Ross v. Rhodes Furniture*,
  146 F.3d 1286, 1289 (11th Cir. 1998)............................................................ 18

*Sentinel Trust Co. v. Universal Bonding Insurance Co.*,
  316 F.3d 213 (3d Cir. 2003)........................................................................... 22

*Sousa v. Miguel*,
  32 F.3d 1370 (9th Cir. 1994)............................................................................ 2

*Tripati v. Henman*,
  857 F.2d 1366 (9th Cir. 1988)......................................................................... 16

*United Sav. Association v. Timbers of Inwood Forest Associates*,
  484 U.S. 365 (U.S. 1988) ............................................................................... 13

*Waters v. Young*,
  100 F.3d 1437, 1441 (9th Cir. 1996).............................................................. 18

State Cases

*Cook v. State*,
  921 So. 2d 631 (Fla.Ct.App. 2005) ................................................................ 21

Docketed Cases

*Wachter v. Lezdey*,
  Case No. CV-99-009335 .................................................................................... 7

Federal Statutes

Bankruptcy Code
  § 502(b) .................................................................................................. 12, 13
  § 502(c) ............................................................................................. 8, 12, 13
  § 502(j) ....................................................................................... 1, 8, 11, 12, 13
  § 1126(c) ........................................................................................................ 12
  § 1129(a)(8).................................................................................................... 12

APPELLEE'S BRIEF
ALPHAMED CLAIM APPEAL

Federal Rules of Civil Procedure
    50 .......................................................................................................... 16, 19, 21
    50(a) ....................................................................................................................... 15
    50(b) ................................................................................................... 6, 15, 18, 19
    56 ........................................................................................................................... 19

42 U.S.C. § 1981 ................................................................................................. 21

Title VII of the Civil Rights Act of 1964 ....................................................... 21

State Statutes

Fla. Stat. § 688.004 ............................................................................................ 17

Other Authorities

9 MOORE'S FEDERAL PRACTICE AND PROCEDURE § 50.02 (3d ed. rev. 2007) ................. 16

A. Miller & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4433, at 308 (1981) ..... 16

RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982) ....................................................... 16

H. Rep. No. 595, 95th Cong. 1st Sess. 220 (1977) ............................................................. 14

W02-WEST:5MML1\400890436.3

# I. STATEMENT OF THE CASE

AlphaMed Pharmaceuticals Corp. ("AlphaMed") filed a proof of claim (the "Claim") in the bankruptcy case of Arriva Pharmaceuticals, Inc. ("Arriva") on October 11, 2007. (Appellant's Combined Appendix[1], 043.)  The Claim was based entirely upon a jury verdict in favor of AlphaMed that had been overturned when the presiding court issued a judgment as a matter of law in favor of Arriva.  (AA 043-058; 256-57.)  Arriva objected to the Claim and, after a hearing on Arriva's objection, the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court") disallowed the Claim and alternatively estimated it at zero for the purposes of voting on Arriva's plan of reorganization.  (AA 518, l.14-19; 521, l.7-11.)  The Bankruptcy Court's order disallowing the Claim (the "Disallowance Order") was entered on December 27, 2007.  (AA 431-32.)

AlphaMed contends that the Bankruptcy Court erred in disallowing its Claim because:  (i) it should have refrained from adjudicating AlphaMed's Claim until the appeal in the Eleventh Circuit is resolved; and (ii) it erred in holding that jury findings from the Florida litigation were overturned.  The Bankruptcy Court was correct on both counts.

AlphaMed's first contention is in direct contrast with the provisions and purposes of the Bankruptcy Code.  The Code recognizes that time is of the essence with respect to distressed debtors, and provides mechanisms for moving onwards with plan confirmation while addressing the interests of claimants with disputed claims.  The Bankruptcy Court utilized those methods and also specifically provided that AlphaMed's Claim would be revisited under Bankruptcy Code Section 502(j) in the event that it prevails in the Eleventh Circuit appeal.  (AA 432.)  The Bankruptcy Court also granted AlphaMed relief from stay to pursue such appeal (AA 512), and provided that distribution of the unsecured claims pool would be stayed until the resolution of said appeal.  (Appellee's Combined Appendix[2],

---

[1]  Hereinafter, citations to Appellant's Combined Appendix shall be in the following form: (AA 001.)

[2]  Hereinafter, citations to Appellee's Combined Special Appendix shall be in the following form: (SPA 001.)

APPELLEE'S BRIEF
ALPHAMED CLAIM APPEAL

1    133:9-12; 154-55: § 7.2.)  Thus, AlphaMed's Claim was dealt with fairly and equitably as

2    contemplated under the Bankruptcy Code.

3         AlphaMed's second argument is also incorrect for three reasons.  First, the Florida

4    District Court granted Arriva judgment as a matter of law ("JMOL").  (AA 256-57.)  The

5    basic nature of a JMOL is to overturn a jury's findings as lacking a "legally sufficient

6    evidentiary basis."  Second, AlphaMed misunderstands the nature of the Florida District

7    Court's ruling.  AlphaMed attempts to argue that the issue of damages was somehow

8    separate from liability.  (Opening Brief, 6:13-16.)  However, the Florida District Court

9    specifically held that damages were an essential element of each cause of action alleged by

10   AlphaMed, such that AlphaMed's failure to prove any damages whatsoever necessarily

11   meant that it failed to carry the burden of proof with regard to each of its causes of action.

12   *AlphaMed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, 432 F. Supp. 2d 1319,

13   1334, 1352 and 1353 (S.D. Fla. 2006).  In addition, though unnecessary, the Florida District

14   Court derided the jury findings in several passages, stating that the jury findings were

15   against the "great weight of the evidence" and noting that the jury failed to follow

16   instructions.  *Id*. at 1356.  Third, the case law cited by AlphaMed is inapt – none of the cases

17   support the contention that a jury's findings survive a JMOL.  And even if they did, the

18   standard cited by AlphaMed – that a jury's findings survive if they are not impugned – is

19   clearly not met in this case given that that Florida District Court conditionally granted a new

20   trial to Arriva and found the jury's verdict to have been against the great weight of the

21   evidence and a product of a failure to follow instructions.

22        The Bankruptcy Court did not err in disallowing AlphaMed's Claim.  The

23   Disallowance Order should be upheld.

### II.  STANDARDS OF REVIEW

25        An appellate court reviews a bankruptcy court's findings of fact under the clearly

26   erroneous standard, *Sousa v. Miguel*, 32 F.3d 1370, 1372 (9th Cir. 1994), and its conclusions

27   of law de novo.  *In re Park-Helena Corp*., 63 F.3d 877, 880 (9th Cir. 1995).

28

APPELLEE'S BRIEF
ALPHAMED CLAIM APPEAL

### III.  STATEMENT OF THE FACTS

**A.     The Background of AlphaMed's Disallowed Claim.**

In the early 1990s, Dr. Allan Wachter and John Lezdey invented and jointly acquired patents for medical technologies related to the treatment of inflammation.  (AA 184.)  In 1992, Dr. Wachter and Lezdey transferred their interests in the patents to Sonoran Desert Chemicals, LLC ("Sonoran").  Sonoran was 50% owned by Wachter, and 50% owned by John Lezdey.  (AA 184.)  Shortly thereafter, Dr. Wachter and Lezdey formed Protease Sciences, Inc. ("PSI"), authorizing it to enter into licensing agreements on behalf of Sonoran. (AA 109, 242.)

In 1997, Wachter, Lezdey, Philip Barr and David Kent formed Arriva, then known as AlphaOne Pharmaceuticals, Inc.  (AA 240.)  Arriva seeks to develop protease inhibitors for treatment of respiratory diseases.  Its main product under development is the biotherapeutic recombinant alpha 1-antitrypsin, commonly called "rAAT," which the company manufactures in engineered yeast cells.  Arriva also has been active in developing the protease inhibitors Ilomastat and SLAPI.

On April 16, 1998, PSI and Arriva entered into a License Agreement (the "Protease License") by which PSI granted to Arriva an exclusive license to exploit certain patents related to rAAT as set forth therein (the "Protease Patents").

**B.     The Arizona Court Upholds the Protease License and Issues Injunctions Against the Lezdeys.**

After the execution of the Protease License, the Lezdeys[3] began to make the first of their many and repeated claims that the Protease License was invalidly executed.  These claims have been made by various of the Lezdeys in several courts, and the result has been a consistent line of judgments in favor of Arriva and the validity of the Protease License.

---

[3]  The "Lezdeys" shall mean collectively John Lezdey; Noreen Lezdey; Jarett Lezdey; Darren Lezdey; AlphaMed Pharmaceuticals Corp.; J.L. Technology, L.P.; J.L. Technology Ltd.; Jamie Holdings, LLC; J & D Science Inc.; and certain of their respective successors and assigns.

APPELLEE'S BRIEF
                                                                     ALPHAMED CLAIM APPEAL

1    First, Allan Wachter, with Arriva's financial support, brought suit in the Superior

2 Court of Maricopa County, Arizona (the "Arizona Court") seeking, among other things,

3 declaratory relief and injunctions that would put these claims of the Lezdeys to rest.

4 (AA 242.)  The Arizona Court first found the Protease License to be valid on February 3,

5 2000, in the context of issuing a preliminary injunction against John, Darren, and Jarett

6 Lezdey, J&D Science, Inc. and J.L. Technology Limited (the "Preliminary Injunction").

7 (AA 242-43.)  The Preliminary Injunction enjoined said parties and "any other persons

8 acting for them or with them" from "acting or speaking, or purporting to act or speak, on

9 behalf of [PSI] or Sonoran without Plaintiffs' [Dr. Wachter's] express consent."  (AA 243.)

10 The Preliminary Injunction remains in force to this day.

11    Further, on February 22, 2002, the Arizona Court again entered a finding in favor of

12 the validity of the Protease License in the context of issuing a permanent injunction against

13 Darren Lezdey, Jarett Lezdey, and J.L. Technology, L.P. (the "Permanent Injunction" and

14 together with the Preliminary Injunction, the "Arizona Injunctions").  (AA 244.)  John

15 Lezdey was not made subject to the Permanent Injunction because he filed for bankruptcy

16 on the eve of its issuance.  (AA 243-44.)  The Permanent Injunction enjoins the parties

17 subject thereto "and any other persons or entities acting in concert with them" from "acting

18 or speaking, or purporting to act or speak, on behalf of" PSI or Sonoran without

19 Dr. Wachter's "express written consent."  (AA 174-75.)  In addition, the Permanent

20 Injunction enjoined these same parties "and any other persons or entities acting in concert

21 with them" from "taking any actions in any capacity to give effect to (or to draw to

22 themselves or any entity, including AlphaMed Pharmaceuticals, Inc., any benefit from) the

23 invalid License Agreements between" PSI and AlphaMed.  (AA 175.)

24    After the entry of the Permanent Injunction, the Arizona Court entered an "Under

25 Advisement Ruling" against John Lezdey.  In that Ruling, the court noted, among other

26 things, that John Lezdey had failed to pay court fines, failed to cure contempt citations and

27 taken many actions that constituted a violation of the Preliminary Injunction.  Such actions

28 included speaking for Sonoran in a patent interference proceeding in the Patent and

-4-

1    Trademark Office, appearing in a European Court of Patent Appeals without Dr. Wachter's

2    consent, and contacting a group of Arriva investors without Wachter's consent.  The Ruling

3    ordered John Lezdey to surrender himself to the Maricopa County Sheriff's Office for

4    incarceration if he did not purge the contempt by a certain date.  (AA 245.)

5    **C.    The Northern District of California Recognizes the Arizona Court's Rulings.**

6          In May 1999, Arriva filed a complaint in this Court, before United States District

7    Judge Illston.  (AA 185.)  In that case, Judge Illston ultimately granted Arriva's motion to

8    dismiss the defendants' counterclaims for declaratory relief.  (AA 195.)  Judge Illston

9    conditioned this dismissal on Arriva's voluntary dismissal of certain claims.  (AA 195.)  In

10   reaching this conclusion, the Court noted:

11                  Lezdey knew the material terms and conditions of the [Protease]
                    License Agreement, advised Wachter that the Agreement was
12                  valid, and approved Wachter's execution thereof.

13   (AA 186.)  In addition, Judge Illston noted the Arizona Court had determined "Arriva's Protease

14   License is 'valid and enforceable.'"  (AA 186.)  Judge Illston further observed Lezdey's disregard

15   of the Arizona Court's contempt orders.  (AA 188.)  Applying the *Brilhart* doctrine, the Court

16   found that after sustaining "several adverse rulings in Arizona," the Lezdeys engaged in forum

17   shopping – "opportunistic maneuvering" that "the Ninth Circuit has discouraged."  (AA 193.)

18   Consequently, Judge Illston held that the Arizona Court's holding that Arriva's Protease License

19   was valid rendered all other judicial proceedings duplicative:  "The Court concludes that the

20   Protease/Arriva license issue has already been extensively litigated in the Arizona Court, and

21   that any litigation in this court would be duplicative."  (AA 190.)

22   **D.    Arriva Prevails Against Similar Claims by AlphaMed in Florida.**

23         In 2003, AlphaMed filed suit against Arriva in the United States District Court for the

24   Southern District of Florida (the "Florida District Court").  In 2005, the lawsuit proceeded to

25   trial on three claims[4]:  (1) misappropriation of trade secrets, (2) tortious interference with

26

27   _____

     [4]  Note that contrary to AlphaMed's contention (Opening Brief, 3:1-3), the validity of the
28   Protease License was not an element of any of the causes of action in the Florida litigation,

-5-

1   business; and (3) unfair competition.  *See AlphaMed v. Arriva*, 432 F. Supp. 2d 1319, 1329

2   (S.D. Fla. 2006).  Initially, a jury returned a verdict in favor of AlphaMed.  Arriva timely

3   moved for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil

4   Procedure.  District Judge Cecilia Altonaga granted Arriva's motion for JMOL, ordering as

5   follows:

6           [I]t is hereby ORDERED AND ADJUDGED that judgment is
            entered in favor of [Arriva] . . . and against Plaintiff AlphaMed
7           Pharmaceuticals Corp.  Plaintiff shall take nothing from
            Defendants, and the action is DISMISSED on the merits.

8   (AA 198.)

9

10          Judge Altonaga issued a published opinion explaining why she granted JMOL to

11  Arriva.  *See AlphaMed v. Arriva*, 432 F. Supp. 2d 1319, 1329 (S.D. Fla. 2006).  Contrary to

12  AlphaMed's assertion that the JMOL was merely a "narrow" form of "post-trial relief"

13  (Opening Brief, 6:13-16), which argument misunderstands the nature of a JMOL, Judge

14  Altonaga explained that AlphaMed's failure to prove the existence of any damages whatsoever

15  was a failure to prove a necessary element of each of its causes of action.  432 F.Supp.2d at

16  1334, 1352 and 1353.  This much can be gleaned merely by scanning the headings of the

17  judge's opinion, such as:  "AlphaMed's Failure to Prove Damages Requires the Court to

18  Vacate the Jury's Finding of Liability on the Claim for Unfair Competition."  *Id*. at 1353.

19          In addition, Judge Altonaga also granted Arriva's alternative motion for a new trial.

20  *Id*. at 1356.  In so ruling, Judge Altonaga noted that such a conditional ruling on a new trial

21  "does not affect the finality of the judgment in Arriva's favor."  *Id*. at 1356, n.54.  In the

22  context of granting the new trial motion, Judge Altonaga gave further evidence that she

23  intended to completely overturn the jury verdict.  The judge's reasons for granting the

24  conditional new trial motion were twofold:  "the jury verdict was against the great weight of

25  the evidence" and "the jury failed to follow instructions."  *Id*. at 1355-1356.  As to the

26

27  and thus any comments made by the jury on the overturned jury verdict form were
    superfluous.

28

APPELLEE'S BRIEF
ALPHAMED CLAIM APPEAL

1    former, Judge Altonaga explained that the jury verdict was against the great weight of the

2    evidence "[f]or the reasons set forth above", which is a reference to the failure to prove the

3    damage element of each claim. *Id*. at 1355. As to the latter, the court noted that the jury's

4    failure to follow instructions was "inappropriately invited" by AlphaMed's closing argument.

5    *Id*. at 1356, n.55. Concluding the opinion, Judge Altonaga stated that "For all of the reasons

6    addressed above, the Court cannot allow the jury's verdict in this case to stand." *Id*. at 1358.

7         Finally, it is worth noting that in the course of her opinion, Judge Altonaga also gave

8    preclusive effect to the findings of the Arizona Court, stating that: "John Lezdey's assertion

9    that the license agreement was executed without his approval is contradicted by a permanent

10   injunction entered in *Wachter v. Lezdey*, Case No. CV-99-009335 . . . ." *AlphaMed Pharms.*

11   *Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d at 1324, n.6.

12        AlphaMed has since appealed the JMOL, which appeal is currently pending before

13   the United States Court of Appeals for the Eleventh Circuit.

14   **E.    Treatment of AlphaMed's Claim in the Bankruptcy Court.**

15        Despite this consistent line of court rulings, the Lezdeys continued to make their

16   baseless assertions to rights in Arriva's intellectual property portfolio, in particular in a suit

17   filed by various Lezdey entities against Arriva in Nevada state court in June of 2007. Due to

18   the effect of these continued baseless claims on Arriva's ability to raise the funding it needs to

19   bring its products to market, Arriva voluntary filed for bankruptcy on August 29, 2007 under

20   Chapter 11 of Title 11 of the United States Code. Arriva's bankruptcy case was filed in the

21   United States Bankruptcy Court for the Northern District of California, as Case No. 07-42767,

22   and was presided over by Hon. Edward D. Jellen, United States Bankruptcy Judge.

23        Undeterred by the JMOL issued against it by the Florida District Court, AlphaMed

24   filed a proof of claim in Arriva's bankruptcy case based entirely on the overturned jury

25   verdict from the Florida action. (AA 043.) AlphaMed's Claim, filed on October 11, 2007 as

26   claim number 14 on the claims register for the bankruptcy case, was in the stated amount of

27   $78,000,000 – the amount of the overturned jury verdict. (AA 043.) The only basis for the

28

-7-

APPELLEE'S BRIEF
ALPHAMED CLAIM APPEAL

1  Claim indicated on the proof of claim was "Legal", and the only item attached to the proof

2  of claim form in support of the Claim was the overturned jury verdict form.  (AA 046-058.)

3      Arriva responded by filing a timely objection to the Claim as part of its Omnibus

4  Objection (the "Objection") to various Lezdey-related claims on November 7, 2007.

5  (AA 200-207.)  In the Objection and the Memorandum of Points and Authorities filed in

6  support of the Objection, Arriva explained that, among other things, the jury verdict form

7  could not serve as a valid basis for a claim in bankruptcy because the jury verdict had been

8  overturned by the JMOL.  (AA 202, 221-23.)  Arriva also noted that, in case AlphaMed

9  sought to amend its proof of claim to reallege the underlying causes of action from the

10  Florida action, the JMOL was a final judgment entitled to res judicata effect.  (AA 202, 223-

11  26.)  In its Objection, Arriva also alternatively moved to have AlphaMed's claim estimated

12  at zero under Bankruptcy Code Section 502(c) for the purposes of calculating the number

13  and weight of votes that AlphaMed would be allotted on Arriva's plan of reorganization.

14  (AA 207, 231-32.)

15      A hearing was held on AlphaMed's Claim on December 13, 2007.  At the conclusion

16  of the hearing, Judge Jellen disallowed AlphaMed's Claim and alternatively estimated it at

17  zero.  (AA 518, l.14-19; 521, l.7-11.)  At the same hearing, Judge Jellen also granted

18  AlphaMed relief from the automatic stay to pursue its appeal of the JMOL in front of the

19  Eleventh Circuit.  (AA 512, l.8-24.)  Thus, in disallowing the Claim, Judge Jellen noted that

20  "this ruling is subject to being revisited in the event that the Florida District Court ends up

21  finding that AlphaMed does have a valid claim against the debtor."  (AA 518, l.17-19.)

22      The order of the Bankruptcy Court disallowing AlphaMed's Claim without leave to

23  amend and alternatively estimating it zero for voting purposes was entered on December 27,

24  2007.  (AA 431-32.)  In said Disallowance Order, the Bankruptcy Court specifically

25  provided that:  "This order does not preclude reconsideration under Bankruptcy Code

26  Section 502(j) or otherwise based on further developments in the pending Florida litigation."

27  (AA 432.)

28

On January 16, 2008, a hearing was held in the Bankruptcy Court on the confirmation of Arriva's Fourth Amended Chapter 11 Plan of Reorganization, Dated December 12, 2007 (the "Plan").  (SPA 118-19, docket #331.)  AlphaMed had previously filed an objection to the confirmation of Arriva's Plan.  (SPA 114, docket #307.)  AlphaMed's counsel was present and heard at each of the January 16 hearing and at the related January 18, 2008 hearing that dealt with the Bankruptcy Court's findings of fact and conclusions of law in support of confirmation of the Plan.  (SPA 118-19, docket #331; SPA 119-21, docket #335.)  At the conclusion of the January 16 Plan confirmation hearing, the Bankruptcy Court ruled that Arriva's Plan would be confirmed, but that according to Section 7.2 of the Plan, distribution of almost all of the funds in the pool to be distributed to the unsecured creditors would be stayed pending the resolution of AlphaMed's appeal in the Eleventh Circuit. (SPA 133:9-12; 154-55: § 7.2.)  In this way, if AlphaMed prevails on appeal in the Eleventh Circuit, its Claim may be reconsidered as set forth in the Disallowance Order, and it may share in the proceeds in the unsecured claims pool with Arriva's other unsecured creditors. On January 30, 2008, after negotiations between AlphaMed's and Arriva's counsel regarding the form of the confirmation order (SPA 122, docket #343, 344), the Bankruptcy Court entered its Order confirming Arriva's Plan.  (SPA 123, docket #347.)

**F.    This Appeal.**

On January 4, 2008, AlphaMed field a notice of appeal of the Disallowance Order. (AA 443-44.)  The Lezdeys also initiated four related appeals.  This Court dismissed as moot the first of these, 08-1279-SI, on May 27, 2008.  This Court has ordered briefing on the remaining appeals, 08-00692-SI, 08-00693-SI 08-00825-SI, contemporaneous with the instant appeal.

## IV.  SUMMARY OF THE ARGUMENT

This Court should affirm the Bankruptcy Court's disallowance of AlphaMed's Claim for two reasons: (1) the Bankruptcy Court and Bankruptcy Code have provided for AlphaMed's appellate rights, such that holding litigation on AlphaMed's Claim in abeyance pending resolution of the Eleventh Circuit appeal, which would be extremely harmful to

1   Arriva and the other creditors, is not necessary or advisable; and (2) the JMOL issued by the

2   Florida District Court overturned the jury's findings, as shown by (i) the basic nature of a

3   JMOL, (ii) the specific rulings of the Florida District Court, and (iii) AlphaMed's failure to

4   cite any case law in support of its position that the jury findings remain intact and have

5   preclusive effect in other courts.

6                                          **V.  ARGUMENT**

7   **A.     The Bankruptcy Court Did Not Err by Disallowing AlphaMed's Claim Rather
            than Holding Adjudication of It in Abeyance Pending the Resolution of the
8            Eleventh Circuit Appeal.**

9            AlphaMed argues that "the [Bankruptcy] Court's decision to disallow AlphaMed's

10  claim was premature and infringes on AlphaMed's right to appeal the [JMOL]" and that "the

11  Bankruptcy Court should have refrained from considering the claim until a decision from the

12  Eleventh Circuit."  (Opening Brief, 9:1-4.)  AlphaMed then argues in a footnote that

13  "Delaying the adjudication of AlphaMed's proof of claim pending a decision from the

14  Eleventh Circuit would not have impacted confirmation of the plan of reorganization."

15  (Opening Brief, 9:4, n.3.)  Thus, AlphaMed essentially makes two arguments when alleging

16  that the Bankruptcy Court erred by failing to hold the adjudication of its Claim in abeyance:

17  (1) the Bankruptcy Court did not provide for its appeal rights in the Eleventh Circuit; and (2)

18  the Plan confirmation process would not have been impacted by the delay that would have

19  arisen were the Bankruptcy Court to have waited until the Eleventh Circuit appeal was

20  confirmed to adjudicate the Claim.  AlphaMed cited no statutory or case law in support of

21  these arguments, nor did it even explain the reasoning behind these arguments, which

22  together take up about one half of a page of its Opening Brief.  (Opening Brief, 8:16 – 9:4.)

23            1.    The Bankruptcy Court and the Bankruptcy Code Provided for AlphaMed's
24                  Appeal Rights.

25            Addressing the first argument, contrary to AlphaMed's contention, its appeal rights

26  were expressly preserved and provided for both by the orders of the Bankruptcy Court and

27  by a provision of the Bankruptcy Code.  The Bankruptcy Court specifically provided for the

28  revisitation of AlphaMed's Claim in the event that AlphaMed prevails on appeal in the

                                              -10-

1   Eleventh Circuit. (AA 518.) Further, the Bankruptcy Court granted AlphaMed's Motion for

2   Relief from Stay (which AlphaMed did not file for over two and a half months after Arriva's

3   bankruptcy filing) so that AlphaMed could pursue the Eleventh Circuit appeal. (AA 512:8-

4   24.) Finally, the Bankruptcy Court by confirming the Plan also stayed the distribution of the

5   large majority of the unsecured claims pool such that, if AlphaMed prevails on appeal, it

6   may take its pro rata share of said pool with the other unsecured creditors. (SPA 133:9-12;

7   154-55: § 7.2.) The Bankruptcy Court's actions thus evidence a consistent and prudent

8   concern for AlphaMed's ability to continue its appeal in the Eleventh Circuit.

9           Further, there is a specific provision of the Bankruptcy Code that protects

10   AlphaMed's ability to appeal in the Eleventh Circuit. Bankruptcy Code Section 502(j)

11   provides in pertinent part that:

12           "A claim that has been allowed or disallowed may be
             reconsidered for cause. A reconsidered claim may be allowed

13           or disallowed according to the equities of the case."

14          That the Bankruptcy Court cited this provision of the Code in its Disallowance Order

15   is no accident, as Section 502(j) mirrors the specific language of the Disallowance Order

16   providing that that the claim may be reconsidered depending on the outcome of the Eleventh

17   Circuit appeal, but that in the meantime the Claim should be estimated at zero so that the

18   plan confirmation process may go forward. *See e.g., In re Spring Garden Foliage, Inc*., 17

19   B.R. 882, 885 (Bankr. M.D. Fla. 1982) ("§ 502(j) indeed permits the reconsideration of an

20   allowed claim, but only for the purpose of determination of the creditor's right whose claim

21   is subject to reconsideration to share in the distribution and not for the purpose of voting

22   after the plan has been confirmed."); *and In re Federated Department Stores*, 144 B.R. 989,

23   992 (Bankr. S.D. Ohio 1992) (same). Thus, the Bankruptcy Court's orders and § 502(j)

24   create a scheme for protecting AlphaMed's appellate rights in the context of Arriva's

25   bankruptcy. Rather than being "infringed" as AlphaMed contends (Opening Brief 9:1-2),

26   AlphaMed's Eleventh Circuit appeal rights were specifically protected by the orders of the

27   Bankruptcy Court and by Section 502(j) of the Bankruptcy Code. If AlphaMed wins its

28   Eleventh Circuit appeal, and if its Claim is ultimately allowed in a set amount, then its claim

-11-

1   will be reconsidered pursuant to the Disallowance Order and Section 502(j).  In that case,

2   AlpahMed's Claim may be allowed and it will share in the distribution of the unsecured

3   claims pool.  This is the way bankruptcy is supposed to work and this is the way it did work

4   in this case.

5

6        2.      The Plan Confirmation Would Have Been Severely Affected by AlphaMed's
           Suggested Delay.

7        AlphaMed's second argument – that delaying the adjudication of AlphaMed's Claim

8   until the Eleventh Circuit appeal "would not have impacted confirmation of the plan of

9   reorganization" – is simply incorrect.  In order for the plan confirmation process to go

10  forward, the Bankruptcy Court needed to address the number and weight of votes on

11  Arriva's Plan that would be allotted to AlphaMed.  Bankruptcy Code Section 1129(a)(8)

12  requires that for confirmation, each class of impaired claims has accepted the plan of

13  reorganization.  Under Bankruptcy Code Section 1126(c), a class of claims is deemed to

14  have accepted a plan of reorganization if more than two-thirds in amount and more than one-

15  half in number have voted in favor of the plan.  In order to make those calculations, the

16  Bankruptcy Court needed to know the total number of votes and the total dollar amount of

17  allowed claims, which required the Bankruptcy Court to decide on the objections to claims

18  made in Arriva's Objection.  This is especially so in the case of the objection to AlphaMed's

19  Claim, since AlphaMed's Claim was very large in dollar amount.

20       In order to decide on the proper number and weight of votes to apportion to an entity

21  that has filed a claim which has been disputed, a Bankruptcy Court has two options:  either

22  disallow the claim under Bankruptcy Code Section 502(b) or estimate it under Bankruptcy

23  Code Section 502(c).  In AlphaMed's case, the Bankruptcy Court did both, finding

24  AlphaMed to have no vote under either measure.

25       A delay in the adjudication of the Objection to AlphaMed's Claim would clearly then

26  have delayed the confirmation of the Plan and operated to injure the interests of Arriva and

27  the other creditors holding allowed unsecured claims.  Timing is always of the essence in

28  Chapter 11 bankruptcy cases, where distresses businesses continue to operate in anticipation

-12-

1  of receiving the discharge they need to regain health.  *See., e.g., United Sav. Ass'n v.*

2  *Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 376 (U.S. 1988) (noting that in the context

3  of a debtor's opposition to a relief from stay motion, the debtor bears the burden of showing

4  that it has "a reasonable possibility of a successful reorganization within a reasonable time");

5  *In re Hill*, 811 F.2d 484, 487 (9th Cir. 1987) (time limitations in the Bankruptcy Rules serve

6  the "interest of prompt administration of bankruptcy cases"); *In re Harrison*, 71 B.R. 457,

7  459 (Bankr. D. Minn. 1987) (time limitations serve the "fresh start" goals of bankruptcy in

8  that they provide that "a petitioning debtor will enjoy finality and certainty in relief from

9  financial distress as quickly as possible.")

10     In Arriva's case, timing was especially important.  Arriva's portfolio of

11  pharmaceutical products are yet in various stages of obtaining FDA approval, such that

12  Arriva is not a company that operates on revenue, but rather one that operates on investment.

13  Arriva was able to secure debtor-in-possession ("DIP") financing to continue operating in

14  bankruptcy, but it only received enough such funding to operate through January, 2008.

15  (SPA 249.)  Further, Arriva also needed to complete its reorganization by the end of

16  January, 2008, in order to avoid defaulting on its obligations to its DIP lenders and so realize

17  upon their obligation to provide "exit financing" to Arriva to continue operation upon its

18  emergence from bankruptcy.  (SPA 249; 255:3-23.)  Thus, if Arriva did not confirm a Plan

19  by the end of January, it would likely have had to convert to a Chapter 7 and liquidate.  This

20  would not only have injured Arriva, but Arriva's creditors as well, all of whom stood to gain

21  more out of a reorganization under Chapter 11 of the Bankruptcy Code than out of a

22  liquidation under Chapter 7.  (SPA 251-52.)

23     Waiting for the Eleventh Circuit appeal to conclude was simply not an option – it has

24  been over seven months since relief from stay was granted and there still has not been a

25  decision – nor is it required under the Bankruptcy Code.  In fact, as explained above with

26  respect to Bankruptcy Code 502(b), (c) and (j), the Code specifically provides for

27  mechanisms to allow the plan confirmation process to continue while such an appeal is

28  pending.  Requiring parties to wait for all appeals related to disputed claims to be exhausted

-13-

would be to needlessly injure the interests of the debtor and the general pool of creditors in order to provide a benefit to a single creditor, thus defeating the purposes of the Bankruptcy Code, and especially Chapter 11 thereof.  *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527 (1984) ("the policy of Chapter 11 is to permit successful rehabilitation of debtors"); *In re Hamada*, 291 F.3d 645, 649 (9th Cir. 2002) (citing the "strict time limitations" provided by the Bankruptcy Code as integral to the achievement of the "Bankruptcy Code's goal of providing debtors with a fresh start"); *In re Timbers of Inwood Forest Assocs., Ltd*., 808 F.2d 363, 373-74 (5th Cir. 1987) (en banc), aff'd, 484 U.S. 365 (U.S. 1988) (stating that a bankruptcy judge must vigilantly manage Chapter 11 cases and "promote their orderly and prompt disposition" in order to effectuate the Code's twin purposes of "reorganizability" on the one hand and protection of the pool of creditors on the other); H. Rep. No. 595, 95th Cong. 1st Sess. 220 (1977) ("The purpose of a business reorganization case, unlike a liquidation case, is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders.")

Contrary to AlphaMed's contentions, its Claim was dealt with fairly and equitably under procedures in the Bankruptcy Code created for just such a situation.  The Bankruptcy Court did not err by disallowing AlphaMed's Claim instead of holding it in abeyance pending the resolution of the Eleventh Circuit appeal.  Rather, the Bankruptcy Court merely did as the Bankruptcy Code and the equities of Arriva's bankruptcy case required.

**B.    The Bankruptcy Court Did Not Err by Holding that the Florida Jury's Liability Findings Were Overturned.**

In its briefing in the Bankruptcy Court, AlphaMed attempted to argue that the jury findings from the Florida litigation were not disturbed by the JMOL and so could serve as a valid basis for a claim in bankruptcy.  When this argument was made orally in front of the presiding bankruptcy judge, Hon. Edward D. Jellen, Judge Jellen responded:  "I can't think of a more disturbing of findings [sic] than to say the judgment is invalid.  Just – he [sic] threw it out… Now, you can go and cross-examine the judge on why he threw them out, but

-14-

1  … I don't think there's any findings that are extant in that case.  There's nothing but the

2  judgment against your client."  (AA 488:24-489:7.)

3       In its Opening Brief, AlphaMed again argues that the jury findings have remained

4  intact, contending that the Bankruptcy Court was in error when it found such findings to

5  have been overturned.  (Opening Brief, 9:5-15:6.)  AlphaMed's position is incorrect.  The

6  Bankruptcy Court's ruling was not error for three reasons:  (1) the fundamental purpose and

7  nature of a JMOL is to overturn the underlying jury verdict; (2) though not necessary to

8  implement to the vacating effect of the JMOL, the Florida District Court also clearly stated

9  that the jury verdict was being vacated in its entirety; and (3) AlphaMed's strained reading of

10  case law is incorrect and inapposite.

11

12      1.     AlphaMed Misconstrues the Basic Effect of a JMOL, which is to Completely
              Overturn a Jury Verdict.

13       A renewed motion for judgment as a matter of law after the entry of a jury verdict is

14  made pursuant to Fed. R. Civ. P. 50(b), and is governed by the same standard as the original

15  motion for a judgment as a matter of law under Fed. R. Civ. P. 50(a), which is that "a

16  reasonable jury would not have a legally sufficient evidentiary basis to find for the party."

17  Fed. R. Civ. P. 50(a).  In other words, a judgment as a matter of law is issued when there is

18  "no legally sufficient evidentiary basis for a reasonable jury to find for [the plaintiff] on a

19  material element of his cause of action."  *Christopher v. Florida*, 449 F.3d 1360 (11th Cir.

20  2006); *see also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1981) (discussing

21  the standards for summary judgment and judgment notwithstanding the verdict); *and Forrett

22  v. Richardson*, 112 F.3d 416, 419 (9th Cir. 1997) (noting that JMOL means that the

23  "evidence, construed in the light most favorable to [AlphaMed], permits only one reasonable

24  conclusion, and that conclusion is contrary to that of the jury").  Even the cases cited in

25  AlphaMed's Opening Brief state as much.  See, e.g., *Pordy v. Land O'Lakes, Inc.*, 97 Fed.

26  Appx. 921, 926 (Fed. Cir. 2004) ("To prevail on a motion for JMOL following a jury trial,

27  the moving party must show that the jury's findings, presumed or expressed, are not

28  supported by substantial evidence.") (internal quotations omitted).

-15-

1    A JMOL is thus a determination that the jury verdict reflected a legal impossibility—

2  that reasonable minds could not differ about the conclusion.  Indeed, the specific purpose for

3  the existence of the JMOL is to overturn jury verdicts.  Fed. R. Civ. P. 50; *Jorgensen v.*

4  *Cassiday*, 320 F.3d 906 (9th Cir. 2003) (discussing when a "district court can overturn a

5  jury's verdict and grant a Rule 50(a) motion"); 9 Moore's Federal Practice and Procedure

6  § 50.02 (3d ed. rev. 2007).

7    Of note, AlphaMed suggests in various places in its Opening Brief that the fact that

8  the Florida District Court's decision has been appealed somehow indicates that the JMOL is

9  invalid and the jury verdict remains intact.  (*See, e.g.*, Opening Brief, 10:19.)  This is plainly

10  not the case.  An appeal of a judgment, such as the JMOL, does not rob it of its final and

11  preclusive effect until it is overturned.  *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir.

12  1988), *citing* 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4433,

13  at 308 (1981); *see also* Restatement (Second) of Judgments § 13 (1982) ([a] "judgment

14  otherwise final remains so despite the taking of an appeal").  AlphaMed cites no authority to

15  the contrary.

16

17    2.    <u>In Addition, the Florida District Court's Opinion Granting the JMOL</u>
          <u>Expressly Provided for the Vacatur of the Entirety of the Jury Verdict</u>.

18    In its Opening Brief, AlphaMed not only misunderstands the basic nature of a JMOL,

19  but also brazenly misrepresents the specific decrees of the Florida District Court on this

20  issue.  Contrary to AlphaMed's contention that the Florida District Court "did not nullify or

21  set aside the jury's findings as to liability" (Opening Brief 9:12), the Florida District Court

22  specifically set out the manner in which AlphaMed's failure to prove any damages

23  whatsoever was a failure to prove an essential element of each cause of action.  Though not

24  necessary to the total upending effect of a JMOL, the Florida District Court explained that

25  such a failure to prove an element of each claim entitled Arriva to the JMOL which vacated

26  the jury verdict in its entirety.  This could not have been clearer than when, in summarizing

27  its verdict, the Florida District Court stated, "AlphaMed's failure to link Defendants' conduct

28  to any damage that it may have suffered is fatal to each of its claims and compels the Court

-16-

to vacate the jury's verdict <u>in its entirety</u>." *AlphaMed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc*., 432 F.Supp.2d 1319, 1334 (S.D. Fla. 2006) (emphasis added).

The Florida District Court then further explained this total upending of the jury verdict as to each claim for relief, reasoning that as damages were an element of each cause of action, the jury verdict must be vacated in its entirety.  In its Fourth Amended Complaint, AlphaMed had presented three claims:  (1) misappropriation of trade secrets; (2) tortious interference with an advantageous business relationship; and (3) common law unfair competition.  *AlphaMed*, 432 F.Supp.2d at 1329.  As to the misappropriation of trade secrets claim, the Florida District Court agreed with the defendants' position that "AlphaMed cannot recover under the Uniform Trade Secrets Act ("UTSA") because it did not present any evidence of damages as required by Fla. Stat. § 688.004."  *Id*. at 1334.  As to the tortious interference claim, the Florida District Court held that "Because AlphaMed was unable to prove its entitlement to lost profit damages, the only measure of damages sought, AlphaMed's claim for tortious interference fails as a matter of law."  432 F.Supp.2d at 1352.  Not coincidentally, this section of the Florida District Court's opinion is entitled "AlphaMed's Failure to Prove Damages Requires the Court to Vacate the Jury's Finding of Liability on the Claim for Tortious Interference."  *Id*.  Finally, as to the unfair competition claim, the Florida District Court held that "While many of the jury's findings are insufficient to support the verdict on the unfair competition count as a matter of law, a through analysis of each finding is unnecessary.  The verdict on AlphaMed's unfair competition claim must be vacated because of AlphaMed's failure to prove damages."  *Id*. at 1353.  As with the tortious interference section, this section of the opinion is tellingly entitled "AlphaMed's Failure to Prove Damages Requires the Court to Vacate the Jury's Finding of Liability on the Claim for Unfair Competition."  *Id*.  Thus, in contrast to AlphaMed's contention that the JMOL was unrelated to the case-in-chief, the Florida District Court took pains to explain the manner in which AlphaMed's failure to prove the elements of each of its causes of action required the Court to issue the JMOL.  Such a ruling could not have been a surprise to AlphaMed, since the requirement that a motion for JMOL be brought at the close of

1   evidence in order to be renewed post-trial under FRCP 50(b) is meant to give the non-

2   movant a chance to correct evidentiary deficiencies. *Ross v. Rhodes Furniture*, 146 F.3d

3   1286, 1289 (11th Cir. 1998); *Waters v. Young*, 100 F.3d 1437, 1441 (9th Cir. 1996). The

4   Florida District Court's grant of JMOL after trial reflects the Court's decision that AlphaMed

5   was apprised of such deficiencies and failed to correct them.

6       On top of the complete vacatur of the jury verdict accomplished by the JMOL, the

7   Florida District Court also granted Arriva's conditional motion for a new trial, which the

8   court explained "does not affect the finality of the judgment in Arriva's favor." 432

9   F.Supp.2d at 1356, n.54. In so ruling, the Florida District Court gave further evidence that it

10  intended to completely overturn the jury verdict. The court's reasons for granting the

11  conditional new trial motion were twofold: "the jury verdict was against the great weight of

12  the evidence" and "the jury failed to follow instructions." *Id*. at 1355-1356. As to the

13  former, the Florida District Court explained that the jury verdict was against the great weight

14  of the evidence "[f]or the reasons set forth above", which is a reference to the failure to

15  prove the damage element of each claim. *Id*. at 1355. As to the latter, the Florida District

16  Court noted that the jury's failure to follow instructions was "inappropriately invited" by

17  AlphaMed's closing argument. *Id*. at 1356, n.55. Finally, concluding the opinion, the

18  Florida District Court stated that "For all of the reasons addressed above, the Court cannot

19  allow the jury's verdict in this case to stand." *Id*. at 1358.

20      Thus, in addition to misunderstanding the basic nature of a JMOL, AlphaMed also

21  misconstrues the Florida District Court's opinion granting the JMOL. The Bankruptcy

22  Court's ruling was not in error – it was as correct then as it is now.

23      3.    AlphaMed's Strained Reading of Case Law is Incorrect and Inapt.

24      AlphaMed cites several cases in its Opening Brief in an attempt to fashion an

25  argument that the Florida jury verdict's findings are still valid and of preclusive effect

26  despite the fact that the Florida District Court (i) issued a JMOL overturning the verdict as a

27  legal impossibility, and (ii) stated the verdict to be "against the great weight of the

28  evidence." AlphaMed's attempt failed.

1    AlphaMed's first case-law based argument is that its "failure to quantify damages did

2    not affect the jury's determination of liability."  This argument is mistaken as a factual matter

3    since as noted above, the Florida District Court held that AlphaMed's failure to prove any

4    damages whatsoever was a failure to prove a necessary element of each of the underlying

5    causes of action.  It is a basic tenet of hornbook law that failure to prove an element of a

6    claim necessitates a finding of no liability.  *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317,

7    323 (1986) (comparing the standards under FRCP 56 and FRCP 50 for judgment upon

8    failing to prove an element of a claim).  In any case, the case law citation provided by

9    AlphaMed to support its argument is off base.  AlphaMed cites to *Firestone Tire and Rubber*

10   *Co. v. Pearson*, 769 F.2d 1471, 1480 (10th Cir. 1985)[5], a case in which a JMOL was never

11   issued, but rather the denial of a JMOL was appealed.  *Id*. at 1473.  Thus, *Firestone* is not a

12   case about the effect of a JMOL on a jury verdict.  Further, in *Firestone*, the plaintiff did

13   prove damages, the question rather concerned the correct amount of damages, for which a

14   new trial was ordered instead of a JMOL.  *Id*. at 1480.  AlphaMed, on the other hand, failed

15   to prove damages at all and so failed to prove an element of each of the causes of action.  If

16   AlphaMed is contending that failure to prove damages should not have merited the JMOL,

17   but rather a new trial as in *Firestone*, then it is in the wrong court to make that argument.

18    AlphaMed next argues that a JMOL does not "take away the jury's findings."

19   (Opening Brief, 11:24-27.)  For this proposition, AlphaMed first provides a quote from

20   *Berry v. United States*, 312 U.S. 450 (1941) about Rule 50(b) not taking away the power of

21   juries to weigh and consider facts.  However, AlphaMed fails to note that in *Berry*, the Court

22   found that the evidence was sufficient to support the jury verdict.  *Berry*, 312 U.S. at 456.

23   Thus, *Berry* is not an example of a situation in which a jury's findings remained intact after a

24

25   [5]  Of note, AlphaMed argues that the Ninth Circuit has "adopted" *Firestone* in *Air-Sea Forwarders, Inv. v. Air Asia Co., LTD*, 880 F.2d 176, 190 n.15 (9th Cir. 1989).  (Opening Brief, 10: n.4.)  However, the *Air-Sea Forwarders* case only cites *Firestone* for the proposition that "appellate court may order new trial where directed verdict found to be inappropriate."  *Air-Sea Forwarders*, 880 F.2d at 190, n.15.  Like *Firestone* itself, *Air-Sea Forwarders* has nothing to do with the effect of a JMOL on a jury verdict.

26

27

28

-19-

1  JMOL.  Rather,  *Berry* is simply a case, unlike the Florida District Court decision in

2  *AlphaMed v. Arriva*, where the JMOL standard was not met.  The quoted language is simply

3  part of the Court's explanation of the JMOL standard.  AlphaMed then analogizes to the case

4  of *Barber v. Whirlpool Corp.*, 34 F.3d 1268 (4th Cir. 1994), citing it as evidence that courts

5  refuse "to disturb a jury verdict" when a JMOL is issued only on some of the claims.

6  (Opening Brief, 12:3 – 6.)  In *Barber*, the denial of a JMOL was appealed as to a jury verdict

7  in favor of plaintiff on two claims.  On appeal, the court granted JMOL as to one of the two

8  claims.  34 F.3d at 1276.  The jury's verdict had not apportioned damages between the two

9  claims but rather had just provided for one damage award covering both claims.

10  Consequently, the court ordered a new trial on damages for the claim that was not

11  overturned by the JMOL.  *Id.* at 1278.  Nowhere in *Barber* does the court say that the

12  findings of the jury regarding the claim that was overturned by the JMOL are somehow

13  preserved.  In addition, AlphaMed fails to recognize that unlike in *Barber*, the JMOL in the

14  Florida litigation here was issued as to all claims.

15        Lastly, AlphaMed attempts to argue that "a vacated jury verdict can still be binding as

16  to the jury's findings concerning the issues tried, unless the jury's findings of fact themselves

17  have been impugned."  (Opening Brief, 12:21-23.)  AlphaMed cites several cases for this

18  proposition.  First, it cites *Pordy v. Land O'Lakes, Inc.*, 97 Fed. Appx 921, 930 (Fed. Cir.

19  2004).  *Pordy* though is not on point because it is a case in which the court is considering an

20  appeal of a JMOL that was issued in favor of the defendant in the case.  *Id.* at 923.  In

21  reversing the JMOL, the court ordered a new trial on a different defense of defendant's,

22  stating that if defendant did not prevail on said affirmative defense, then the jury verdict

23  would be reinstated.  *Id.* at 930.  In other words, it was not a case where a court considered

24  the effect of a jury verdict while a JMOL was still in place.  Similarly, in *Lifewise Master*

25  *Funding v. Telebank*, 374 F.3d 917 (10th Cir. 2004), a JMOL was issued in favor of the

26  defendant lender on the ground that plaintiff borrower had failed to meet a precondition to

27  receiving funding.  *Id.* at 921-22.  The ruling on the precondition was overturned on appeal,

28  leading the court to reach a new issue of reliance damages.  *Id.* at 933.  In considering this

APPELLEE'S BRIEF
ALPHAMED CLAIM APPEAL

1  issue, the court relied on the jury findings which had been overturned by the lower court's

2  ruling on the precondition to funding. *Id*. at 933-34. Thus in *Lifewise*, since the appellate

3  court overturned the basis of the JMOL, this was again not a case in which a court

4  considered the effect of a jury verdict in light of an existing JMOL.

5      AlphaMed's citation to *Artis v. Hitachi Zosen Clearing, Inc*., 967 F.2d 1132 also does

6  not support its argument. *Artis* is a case in which a court considers the relationship between

7  jury findings in an employment case brought under 42 U.S.C. § 1981 and the same case

8  brought simultaneously under Title VII of the Civil Rights Act of 1964. In *Artis*, the lower

9  court vacated the jury verdict because it decided that the case should not have gone to the

10  jury. *Id*. at 1135. The opinion does not say that it was a JMOL under Rule 50. Then, in

11  deciding the same action in a bench trial under Title VII, the lower court appeared to rely

12  upon the vacated jury verdict. *Id*. The appellate court held that this was not error. *Id*. at

13  1138. In so holding, the court contrasted to another case in which a vacated jury verdict

14  could not be relied upon because in that case, "the court concluded that at least part of the

15  jury's verdict was not supported by the evidence." *Id*. Of course, the JMOL issued by the

16  Florida District Court was just such a case where the court "concluded that at least part of

17  the jury's verdict was not supported by the evidence" and so could not be relied upon.

18      As noted in subsection 1 above, a JMOL is issued when "a reasonable jury would not

19  have a legally sufficient evidentiary basis to find for the party." Fed. R. Civ. P. 50.

20  Consequently, even if AlphaMed is correct that a jury's findings could remain valid if not

21  "impuged", the nature of a JMOL is to "impugn" jury findings. In addition, as noted in

22  subsection 2 above, the Florida District Court specifically impuged the jury findings,

23  holding them to be "against the great weight of the evidence."

24      AlphaMed takes its "impugned" argument one final step further in the wrong

25  direction when it argues that such non-impugned jury verdicts also have preclusive effect.

26  (Opening Brief, 13:7-9.) This is plainly wrong, since the basic test for issue preclusion

27  requires the judgment to be final, *Cook v. State*, 921 So.2d 631, 634 (Fla.Ct.App. 2005), and

28  a jury verdict overturned by a JMOL is far from final under any measure. Further, the cases

-21-

cited in support of AlphaMed's position, *Sentinel Trust Co. v. Universal Bonding Ins. Co*., 316 F.3d 213 (3d Cir. 2003) and *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins*., 970 F.2d 1138 (2d Cir. 1992) are both cases dealing the preclusive effect of a judgment vacated as part of a settlement, not one overturned by a JMOL. *Sentinel,* 316 F.3d. at 216; *Harris Trust*, 970 F.2d at 1146.

For the reasons stated above, none of the list of cases cited by AlphaMed support the proposition for which they are cited – that the findings of a jury verdict survive a JMOL and have preclusive effect in other courts. This is so because it is not the case: a JMOL generally and the decision of the Florida District Court in particular operated to overturn the Florida jury's findings. Further, even if the "impugned" standard for vacated judgments cited by AlphaMed is correct, AlphaMed would fail to meet it because both the JMOL standard and the Florida District Court's opinion operate to impugn the Florida jury's findings.

## VI.  CONCLUSION

The Bankruptcy Court dealt with AlphaMed's Claim in a fair and equitable manner as contemplated under the Bankruptcy Code. AlphaMed's assertion that the Bankruptcy Court was required to delay adjudication of AlphaMed's Claim until the resolution of AlphaMed's appeal in the Eleventh Circuit is simply wrong. Further, there is no support for AlphaMed's assertions that the Florida jury's findings not only survived the JMOL but also have preclusive effect in other courts, including the Bankruptcy Court. Indeed, were the jury findings to have such preclusive effect, then AlphaMed would be in the same position as if it had prevailed in Florida, which it did not. Consequently, this Court should affirm the order of the Bankruptcy Court disallowing AlphaMed's Claim and estimating it at zero for voting purposes in the alternative.

1  Dated:  June 25, 2008

2                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3

4                              By /s/ Michael M. Lauter
5                                      MICHAEL M. LAUTER

6                                      Attorneys for
                                ARRIVA PHARMACEUTICALS, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-23-